IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

MICHELLE RICKER,                                    Case No. 6:12-CV-00664-CL

        Plaintiff,

                               REPORT & RECOMMENDATION

    v.

CAROLYN W. COLVIN,[1]

        Defendant.

_____

CLARKE, Magistrate Judge.

Plaintiff Michelle Ricker ("Ricker") challenges the final decision of the Social Security Commissioner ("the Commissioner") finding her not disabled and denying her application for Disability Insurance Benefits ("SSD") pursuant to the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons stated below, the court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

_____

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

## PROCEDURAL HISTORY

Ricker applied for SSD on February 3, 2009, alleging an onset date of October 1, 2007. Tr. 140-148.[2] The Commissioner denied Ricker's application initially and upon reconsideration. Tr. 79-89, 91-99. An Administrative Law Judge ("ALJ") held a hearing on February 8, 2011. Tr. 40-72. On February 22, 2011 the ALJ issued a decision finding Ricker not disabled. Tr. 14-26. On February 8, 2012, the Appeals Council denied Ricker's request for review. Tr. 1-3. Accordingly, the ALJ's decision became the final decision of the Commissioner.

## FACTUAL BACKGROUND

Ricker was born in 1979. Tr. 140. She has a high school diploma and attended one year of college. Tr. 188. Ricker has past work experience as a cashier, retail clerk, office cleaner, nurse assistant, fast food worker, night auditor, and waitress. Tr. 63-65. She alleges disability since October 1, 2007 due to degenerative disc disease and depression. Tr. 140-48, 184.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. Id.

---

[2] "Tr." refers to the Transcript of the Administrative Record.

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication continues beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p at *1 (*available at* 1996 WL 374184).

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work, the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); Bowen, 482 U.S. at 142; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. Id.

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id. at 1100. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g): 404.1566; 416.920(g); 416.966.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Ricker had not engaged in substantial gainful activity after the alleged onset date. Tr. 16. At step two, the ALJ found that Ricker had the severe impairments of cervical spine degenerative disc disease status post-fusion, obesity, anxiety, personality disorder, and posttraumatic stress disorder. Tr. 16. At step three, the ALJ found that Rush's impairments do not meet or equal any of the listed impairments. Tr. 18. The ALJ found that Ricker had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but stated that she could only occasionally reach above her head and from floor level and have only occasional interaction with coworkers and the public. Tr. 19. The ALJ found that Ricker can frequently rotate her head and perform simple, repetitive tasks. Id.

At step four, the ALJ found that Ricker could perform her past relevant work as a fast food worker. Tr. 24. Accordingly, the ALJ found Ricker not disabled within the meaning of the Act. Tr. 25. As an alternative basis for finding Ricker not disabled, the ALJ found that Ricker could perform jobs existing in significant numbers in the national economy, including as a small products assembler and a cafeteria attendant. Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and his or her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" is "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (*citing* Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (*citing* Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); *see also* Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.

## ANALYSIS

Ricker claims that the ALJ erred by having a "pre-determined" disposition when evaluating her claim, improperly considering her obesity, finding that she could perform past work as a fast food worker, and relying on vocational expert ("VE") testimony that conflicted with the Dictionary of Occupational Titles ("DOT").

### I.    ALJ Bias

Ricker first alleges that the ALJ was predisposed to find her not disabled. Ricker cites to part of the hearing where the ALJ questioned Ricker following Ricker's statement that she was "not allowed to drive." Tr. 57. The ALJ asked if a doctor had told her that she should not drive, and Ricker stated that a doctor had. Id. The ALJ then asked if the restriction was recorded in the medical record. Tr. 58. Ricker's attorney stated that he could not find the specific limitation in the medical record, after which Ricker stated that two doctors had told her that she could not drive. Id. Ricker and the ALJ then had the following exchange:

> ALJ: Okay, well it's not in the record, why would they tell you can't drive?
> PTF: First of all, because of the medications I'm on, and second of all, because I have a limited range of motion.
> ALJ: Okay, well, I've never heard of that…I'm going to put it down, but I'm just telling you, I've never heard that. Is your daughter on social security also?
> PTF: Yeah. Because of the limited range of motion in my neck, because of the –
> ALJ: A lot of people have limited range of motion in their neck and drive.
> PTF: Yeah, are they also on morphine?

ALJ: Yeah.
PTF: And I was told if I got caught driving on morphine, I can get a driving under the influence ticket.
ALJ: Who told you that?
PTF: The Doctor.
ALJ: I don't think that's correct.

Tr. 58. Ricker claims that this exchange demonstrates that the ALJ was biased against Ricker and unable to reach a fair conclusion.

Ricker also argues that the ALJ demonstrated prejudice by stating that he would credit her testimony regarding cervical spine degenerative disc disease, but then rejecting some of Ricker's later testimony. At the hearing, Ricker's attorney stated that Ricker had an impairment in her cervical spine that was confirmed by an MRI scan. Tr. 46. Neither the ALJ nor Ricker's attorney was able to identify the MRI scan in the record. Tr. 46, 49-50. The ALJ then stated, "Alright then, I'm going to credit her testimony on the cervical spine degenerative disc disease." Tr. 50. Later in the hearing, Ricker made some statements about the effects of her cervical spine impairment. Tr. 56, 59. In his opinion, however, the ALJ found that Ricker's testimony, including her testimony about the extent of her cervical spine degenerative disc disease, not entirely credible. Tr. 20.

ALJs are assumed to be unbiased. Rollins v. Massanari, 261 F.3d 853, 857–58 (9th Cir. 2001) (*citing* Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir.1999)). For a claimant to rebut the presumption that an ALJ is impartial, the claimant must show that "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" Rollins, 261 F.3d at 858 (*quoting* Liteky v. United States, 510 U.S. 540, 551 (1994). However, "'expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women…sometimes display' do not establish bias." Id. (*quoting* Liteky, 510 U.S. at 555-56).

Page 6 – REPORT AND RECOMMENDATION

In this instance, the record does not support remand.  The ALJ's statement about driving was incorrect, and does reflect impatience and frustration on the part of the ALJ.  However, the ALJ's behavior was not so extreme that it indicated he was incapable of rendering a fair judgment.  Ricker had stated that her treating physicians had given her a categorical limitation on driving, but the limitation was not in the record before the court.  The ALJ's reaction is "within the bound of what imperfect men and women…sometimes display." Liteky, 510 U.S. at 555-56. Moreover, the ALJ continued to let Ricker testimony about her symptoms after the exchange, and the ALJ's written opinion makes no mention of the conversation.  Tr. 59-62.

In reference to the ALJ's statement that he would credit her testimony about her cervical spine, the court finds that this statement was not in error.  The statement came after Ricker asserted that she had a medically determinable impairment in her cervical spine but was unable to find the corresponding MRI.  Tr. 46-50.  The ALJ then stated that he would credit Ricker's testimony.  Tr. 50.  Later in the hearing, Ricker provided limited testimony about how her cervical spine degenerative disc disease inhibited her ability to work.  Tr. 56, 59.  Viewed in context, the ALJ's statement was merely meant to indicate that he would credit that fact that Ricker had a medically determinable impairment, despite the fact that neither the ALJ nor Ricker's attorney could find the MRI, and was not intended to mean that he would credit Ricker's testimony about the effects of her cervical spine impairment.  Indeed, it is extremely unlikely that an ALJ would credit a witness' future testimony as true prior to actually hearing the testimony.  Moreover, while Ricker states that she may have offered more evidence about her limitations based on her cervical spine impairment following her fusion surgery if the ALJ had not made the statement, the record shows that Ricker was able to offer some testimony about her limitations.  Tr. 56, 59.  Viewed in context, the ALJ's statement was not in error.

**2.      Obesity**

Ricker also assigns error to the ALJ's discussion of her obesity.  The Social Security

Regulations require ALJs to "do an individualized assessment of the impact of obesity on an

individual's functioning when deciding whether the impairment is severe," and states that ALJs

must "explain how we reached our conclusions on whether obesity caused any physical or

mental limitations."  SSR 02-1p at *4, *7 (*available at* 2002 WL 34686281).  In reference to

Ricker's weight, the ALJ found that Ricker's obesity was a severe impairment at step two, Tr.

16, but found that it did not aggravate her other impairments, stating:

> The undersigned finds the claimant's impairments, even when adding to [the]
> additional factor of obesity, still do not meet or medically equal any impairments
> in the Listing of Impairments...

> Carolyn A. Parsons, M.D. submitted a physical assessment on behalf of DDS in
> October 2009.  Upon review of the record, Dr. Parsons listed the claimant's
> primary diagnosis as status post cervical fusion.  She was aware of the claimant's
> obesity and her allegations of knee pain.  However, Dr. Parsons stated that the
> claimant's weight did not affect the result of her assessment.

Tr. 18, 22.  Ricker argues that the ALJ fell short of the requirements of SSR 02-1p because he

did not explain how obesity had a combined impact with Ricker's other impairments.  Ricker

states that her cervical spine condition is exasperated by her obesity, contending that her RFC

would have been different if obesity had been considered in combination with this impairment.

The court recommends that the ALJ's findings be affirmed.  The ALJ found that obesity

did not have a combined impact with Ricker's other impairments, basing his decision in part on

Dr. Parson's finding that Ricker's obesity did not impact her functioning.  Tr. 22.  Additionally,

Ricker provides no evidence to support her assertion that her obesity exasperated her cervical

spine impairment.  In social security cases, "[t]he claimant has the burden of providing evidence

as to how [her] obesity limits [her] functioning."  <u>McCullough v. Astrue</u>, No. CV-10-6117-ST,

2011 WL 5873068, at *11 (D. Or. Sept. 1, 2011) (*citing* Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005)); Paap v. Astrue, No. 3:10-CV-6303-HZ, 2012 WL 652519 at *9 (Dr. Or. Feb. 28, 2012).  Ricker does not point to evidence in the record stating that her impairments are caused by her obesity or that her obesity exasperates her symptoms. *See* Lowe v. Astrue, Civ. No. 10-0904-MO, 2011 WL 4345168, at *4 (D. Or. Sept. 15, 2011) ("To succeed in an obesity claim, a claimant must show that his obesity exacerbates his other symptoms") (*citation omitted*). The ALJ's findings regarding Ricker's obesity should be upheld.

3.    **Past Relevant Work**

Ricker also argues that the ALJ improperly evaluated her ability to perform past relevant work.  At step four, the ALJ found that Ricker could perform her past relevant work as a fast food worker, as actually performed.  Tr. 24.  In reaching his conclusion, the ALJ stated that he relied on the VE's testimony that a fast food worker position is consistent with Ricker's RFC. Ricker contends that the ALJ did not make adequate factual findings to support his conclusion as to the mental and physical demands of her past work.

At step four, the claimant has the burden of proving that she can no longer perform her past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1520(e) and 416.920(e); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)).  While the burden of proof lies with the claimant at step four, the ALJ is required to make the requisite factual findings to support his conclusion regarding disability.  Id. (*citing* SSR 82-61 (*available at* 1982 WL 31387)).  The claimant must be able to perform the "actual functional demands and job duties of a particular relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy."  SSR 82-61, at *2.  The ALJ must make "specific findings as to the claimant's residual functional capacity, the

physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Pinto, 249 F.3d at 845 (*citing* SSR 82-61). To make such findings, the ALJ must obtain "factual information about those work demands which have a bearing on the medically established limitations." SSR 82-62, at *3 (*available at* 1982 WL 31386). "Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate." Id.

In this case, the ALJ did not obtain any information about the physical and mental demands of Ricker's past work as a fast food worker. At the hearing, the ALJ merely questioned the VE as to whether Ricker could return to her past work if she was limited to light work, occasional overhead reaching, simple repetitive tasks, and occasional contact with coworkers and the public. Tr. 64. The ALJ did not question Ricker about her past relevant work, and the record does not contain a written description submitted by Ricker with detailed information about the physical and mental demands of the job. While the Commissioner contends that Ricker's attorney could have solicited testimony from Ricker about the specific demands of her past relevant work, the ALJ is obligated to support his decision with factual findings. Pinto, 249 F.3d at 844 (*citing* SSR 82-62).[3] Because the ALJ failed to make specific findings as the physical and mental demands of Ricker's past relevant work, this matter should be remanded.

### 4.    VE Testimony

Ricker's final assignment of error regards the ALJ's step five findings. At step five, the ALJ found in finding that Ricker could perform the jobs of a fast food worker, small products

---

[3] The Commissioner also contends that the ALJ's identification of the specific DOT code for her position as a fast food worker satisfies his obligation to make factual findings. The court disagrees. The DOT code (DOT 311.472-010) does not include all of Ricker's limitations, and the ALJ does not expressly explain why the claimant can work despite the divergence between the DOT and the claimant's limitations. *See* Pinto, 239 F.3d at 847 ("[I]n order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation" (*citation omitted*)).

assembler, and cafeteria attendant.  Tr. 25.  Ricker contends that these jobs require either

continuous or frequent reaching, which the ALJ precluded, and the ALJ failed to ask the VE

about the conflict with the DOT.

At step five, the ALJ has the burden to identify jobs that exist in significant numbers in

the national economy that the claimant can perform.  Johnson v. Shalala, 60 F.3d 1428, 1432

(9th Cir. 1995).  The ALJ may rely on the testimony of a VE, who can assess the claimant's

limitations and identify any existing jobs within the claimant's RFC.  Massachi v. Astrue, 486

F.3d 1149, 1152 (9th Cir. 2007).  The ALJ may also rely on the DOT "in evaluating whether the

claimant is able to perform other work in the national economy."  Terry v. Sullivan, 903 F.2d

1273, 1276 (9th Cir. 1990).  If an ALJ uses a VE, the ALJ has a duty to inquire whether there is

consistency between the VE's testimony and the DOT.  SSR 00-4p at *2 (*available at* 2000 WL

1898704); Massachi, 486 F.3d at 1152.  If there is a conflict, the ALJ may rely upon a VE's

testimony rather than the DOT when the issue is "complex," 20 C.F.R. § 404.1566(e), or when

"the record contains persuasive evidence to support the deviation."  Johnson, 60 F.3d at 1435.

In this case, the VE's testimony that Ricker could perform the jobs of a fast food worker,

small products assembler, and cafeteria worker raised a potential conflict with Ricker's

limitation to occasional reaching.  The DOT states that fast food workers and small product

assemblers are jobs that require continuous reaching, while the position of a cafeteria attendant is

a job that requires frequent reaching.  DOT 311.472-010, 739.687-030, 311.677-010.

"Reaching" is defined in the DOT as "[e]xtending hand(s) and arm(s) in any direction."  *See*

Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational

Titles, Appendix C (1993).  Many courts in this circuit have found that there is a potential

inconsistency between VE testimony that a job could be performed by someone who can only

occasionally reach overhead and DOT job descriptions requiring frequent reaching. *See* <u>Pacheco v. Astrue</u>, No. EDCV 09-1063 (CW), 2010 WL 3488215, at *5 (C.D. Cal. Aug. 31, 2010); <u>Richardson v. Astrue</u>, No. 11-CV-1332-LHK, 2012 WL 5904733, at *6 (N.D. Ca. Nov. 26, 2012); <u>Marquez v. Astrue</u>, No. CV-11-339-TUC-JGZ-DTFU, 2012 WL 3011778, at *3 (D. Az. May 2, 2012); <u>Diaz v. Astrue</u>, No. 1:10cv034 DLB, 2011 WL 3359642, at *2-3 (E.D. Cal. Aug. 3, 2011). This court applies the same analysis, and finds that the DOT for the positions of a fast food worker, small products assembler, and cafeteria worker potentially conflicts with Ricker's RFC.

While an ALJ may rely on a VE's testimony rather than the DOT when the issue is complex or the record contains persuasive evidence to support doing so, neither situation applies in this case. The VE did not acknowledge the potential conflict, much less try to explain it, and the record demonstrates that Ricker *was* limited in overhead reaching. Tr. 16, 196, 517. Accordingly, the ALJ erred at step five in failing to obtain an explanation for and resolve the VE's deviation from the DOT before the ALJ relied on the VE's testimony on finding Ricker not disabled.

## RECOMMENDATION

Because outstanding issues remain which must be resolved, and because it is not clear from the record that Ricker is entitled to disability benefits, the court recommends that the ALJ's decision be reversed and remanded for further administrative proceedings consistent with this opinion.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge.  Objections to this Report and Recommendation, if any, are due fourteen (14) days from today's date.  If objections are filed, any response to the objections is due fourteen (14) days from the date of the objections. *See* FED. R. CIV. P. 72, 6.

DATED this _____ day of MAY, 2013.

MARK D. CLARKE
United States Magistrate Judge